IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIN BURKE,                    )
                               )
            Plaintiff,         )
                               )
     v.                        )   No.  04 C 2678
                               )
J.B. HUNT TRANSPORT SERVICES, INC.,)
                               )
            Defendant.         )

MEMORANDUM OPINION AND ORDER

Erin Burke ("Burke") initially brought a four count Complaint against J.B. Hunt Transport, Inc. ("Hunt"). Counts I and II still charge Hunt with violations of the Family Medical Leave Act of 1993 ("FMLA," 29 U.S.C. §§2601 to 2654),[1] while Counts III and IV had asserted state law claims of intentional infliction of emotional distress and retaliatory discharge. After the completion of discovery, during the course of which Burke voluntarily dismissed her Count III claim, Hunt brought a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment on the three remaining claims. For the reasons set out in this memorandum opinion and order, Hunt's motion is granted as to all remaining claims and this action is dismissed.

Summary Judgment Standards

Familiar Rule 56 principles impose on movant Hunt the burden of establishing the lack of a genuine issue of material fact

---

[1] All further references to FMLA provisions will take the form "Section --," omitting the prefatory "29 U.S.C."

(Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the nonmoving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). That said, to avoid summary judgment a nonmovant still "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)). In the end, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## Evidentiary Issues

In an effort to highlight the existence or nonexistence of material factual disputes, this District Court's LR 56.1 requires both (1) that the movant file a "statement of material facts" organized by numbered paragraphs, each with specific citation to the evidentiary record (LR 56.1(a)(3)), and (2) that the nonmovant file a paragraph-by-paragraph response to that statement, also with specific record citations (LR 56.1(b)(3)(A)). Although the nonmovant may of course assert "additional facts" as well, that must be done in a separate statement (LR 56.1(b)(3)(B); Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 817 (7th Cir. 2004)). Given the importance

of LR 56.1's function, our Court of Appeals has consistently made it clear that District Courts are entitled to strict adherence to LR 56.1 and may penalize violations by disregarding a party's noncompliant factual statements or by simply adopting the opposition's statements (see, e.g., Ammons, 368 F.3d at 817-18; Brengettcy v. Horton, 423 F.3d 674, 681 (7th Cir. 2005)).

While Hunt has properly filed its own initial statement,[2] Burke has inexplicably failed to file the required response to that statement. Instead Burke's only evidentiary submission has been a 12-paragraph affidavit attached to her responsive memorandum--not at all the specific "paragraph-by-paragraph" response mandated by LR 56.1(b)(3)(A)(see FTC v. Bay Area Bus. Council, Inc., 423 F.3d 627, 633 (7th Cir. 2005)).

This Court will not automatically adopt the strict (though caselaw-authorized) approach of rejecting that offering because of its noncompliance with LR 56.1, treating it instead as an attempted Rule 56(e) submission. But even if viewed through that more generous lens, most of its statements merely echo Hunt's own statements (compare B. Aff. ¶¶1-9 with H. St. ¶¶1, 9-18), and those few assertions that actually offer anything of potential import--stating (1) that it was Hunt's "policy and practice" to

---

[2] This opinion will cite to that statement as "H. St. ¶--." As for Burke's deposition and affidavit, they are respectively cited as "B. Dep. --" and "B. Aff. ¶--." Finally, the same "H." and "B." references will apply to the parties' legal memoranda (each cited "Mem.").

3

find administrative assistants new jobs when their old ones were eliminated and (2) that "shortly after" Burke was terminated an administrative assistant opening became available but was not offered to Burke (B. Aff. ¶¶10-12)--do not meet the Rule 56(e) test of admissibility in any case.

For example, Burke offers no evidentiary support for her conclusory characterization of a Hunt "policy and practice" as to laid-off administrative assistants (B. Aff. ¶10). Such a naked unsubstantiated assertion--apparently based solely on the fact that her own past layoffs had fortuitously occurred when alternative positions happened to be open (id. ¶¶2-7)--does not qualify under the Federal Rules of Evidence ("Evid. Rules")(see Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994)).

Similarly, Burke's claim that there was an administrative assistant position open "shortly after" she was terminated also flunks the admissibility test, both because it is at odds with her own earlier deposition testimony and, more critically, because it is hearsay. Burke testified in her deposition that she had no reason to believe that Hunt had any administrative assistant openings either during her FMLA leave or in the month after her termination (B. Dep. 126). At best that puts an extraordinary strain on her later affidavit's language asserting that such a position was open "shortly after [she was] fired" (see, as to the effect of tension between deposition testimony

and a later affidavit, such cases as <u>Ineichen v. Ameritech</u>, 410 F.3d 956, 963 (7th Cir. 2005)). But even apart from that, the representation in the affidavit is inadmissible on hearsay grounds: It merely reports what two Hunt employees--only one of whom, Mark Emerson ("Emerson"), she was apparently able to name--purportedly told her (B. Aff. ¶¶11-12).

To be sure, Evid. Rule 801(d)(2)(D) prescribes the basis for nonhearsay (and hence admissible) treatment of some statements made by agents of a party opponent. But those criteria include the requirement that the statements at issue concern "a matter within the scope" of the declarant's employment (<u>id</u>.). Here the only evidence Burke has offered on that score is her vague claim--wholly lacking in foundation--that Emerson "purportedly had some authority over this matter" (B. Aff. ¶12). But in that respect Emerson's asserted promise to "give [Burke's application] to the right person" (<u>id</u>.) confirms that he himself did not have authority over hiring for that position. And with nothing to show that Emerson had personal knowledge of a purported vacancy, any statement that he might have made on the subject would itself be based on someones else's statement -- hence hearsay and therefore inadmissible. Finally, what has been said here as to Emerson obviously applies a fortiori to the anonymous second employee to whom Burke claims to have spoken.

In the end Burke's factual filings not only fail to meet the

5

particular requirements of LR 56.1, but also--at least as to the few potentially relevant assertions that she advances--fail to meet basic evidentiary requirements. Because of their substantive deficiency rather than on procedural noncompliance grounds, this Court has rejected Burke's evidentiary submissions and has accepted Hunt's statement of facts as uncontradicted. Thus the following Background section is based solely on Hunt's statement of facts.[3]

## Background

Hunt is a "national multi-model containerized transport company" that holds trucking accounts with various clients nationwide (H. St. ¶¶2, 5). Larger clients are serviced by Hunt's "dedicated accounts" division (id. ¶6). Staffing and other operational details of such accounts are prescribed by individual contracts between Hunt and its clients (id. ¶¶6-8). Depending on a client's "needs and desires," the contractual specifics can vary: not only the location of Hunt's employees--sometimes they are based "on-site at the client's

---

[3] In a sense the just-completed analysis merely knocks down a straw man, for there is no need to quibble over whether Burke's undefined usage of "shortly after" in her affidavit actually contradicts her deposition testimony, so as to call for outright rejection of the affidavit. As the later discussion in the text reflects, the statute and its supporting Regulation equate the employee's on-leave status to that of an employee who was working during the same time frame--and there is no dispute as to the nonexistence of an equivalent open position at the time of Burke's termination.

6

facility"--but also the number of Hunt employees assigned to an account and the capacities in which they serve (id. ¶¶6-8).

Burke began working for Hunt in August 1999 as an "administrative assistant," performing billing, invoicing, payroll and other general administrative duties "as needed" (id. ¶¶9-10). During the term of her employment (which ended on March 7, 2004) Burke worked on a number of accounts, including Home Depot, Wal-Mart and finally Weyerhaeuser, moving among locations as the clients' needs dictated (id. ¶¶11-18). On at least two occasions before she took her final position with the Weyerhaeuser account, her departure from a position was triggered by the client's decision to eliminate that position (id. ¶¶14, 17). Although there are generally only 7 to 10 administrative assistant positions in all of Hunt's Chicago area operations (id. ¶6), on each of those two occasions there fortunately happened to be a position open on another account, so that Burke was able to transfer to a new client (id. ¶¶15, 18).

Burke's final transfer occurred in March 2003, when her position on a Wal-Mart account was eliminated by the client and she was able to move to an equivalent opening on the Weyerhaeuser account (H. St. ¶17-18, 23). Before Burke's arrival the Weyerhaeuser account had been supported by two Hunt employees: Account Manager John Copenhaver ("Copenhaver") and ex-Weyerhaeuser employee Bob Grube ("Grube")(id. ¶¶19-20), the

7

latter of whom had originally been primarily responsible for the "load planning and routing" of Hunt trucks (id. ¶20). But in early 2003 Weyerhaeuser requested that Grube instead drive a truck full time--a move made because Weyerhaeuser thought it would be "more efficient and cost-effective"--leaving Copenhaver to pick up Grube's planning and routing responsibilities (id. ¶21). Because Weyerhaeuser and Hunt agreed that the account needed an administrative assistant to help lighten Copenhaver's load, Burke (then newly laid off from the Wal-Mart account) was given the position (id. ¶22-23). Weyerhaeuser paid her salary as part of the contract it negotiated with Hunt (id. ¶24).

In September 2003, soon after Burke's move to the Weyerhaeuser account, Weyerhaeuser approached Hunt to discuss yet another restructuring of its account, again "in an effort to be more efficient and save money" (H. St. ¶25). Under the renegotiation of the Weyerhaeuser-Hunt contract that followed, effective December 31, 2003 Weyeraeuser took the "load planning and routing" functions of the account "in-house" by giving those functions back to Grube and hiring him directly as its employee (id. ¶¶26-27). Because Copenhaver's load was lightened by that restructuring, he reassumed his old administrative tasks, and the administrative assistant position held by Burke was eliminated (id. ¶¶28-30). Even as of the considerably later time of filing of Hunt's Rule 56 motion, Weyerhaeuser's account had never again

8

had an administrative assistant supporting it.

While those changes were in the works, Burke--who had become pregnant in the spring of 2003--went into premature labor on December 15, 2003 (H. St. ¶31). Although she did not give birth that day, Burke was put on bed rest and immediately applied for FMLA leave (id.). Hunt approved her request, and Burke remained on leave--taking the full 12 weeks to which FMLA entitled her--until March 7, 2004 (id. ¶32). On December 31, 2003 Hunt told Burke that her position had been eliminated (due to the renegotiation of the Weyerhaeuser contract) and that it would try to find her an alternative administrative assistant position in the Chicago area (id. ¶¶6, 33). Even after the position was eliminated, Hunt continued to pay Burke 50% of her salary throughout the remainder of her leave (id. ¶34). Unfortunately no such position became available over the next few months (id. ¶¶35, 39-41, 43), and on March 7, 2004--the end of Burke's leave--Hunt terminated her (id. ¶36).

On April 14, 2004 Burke filed this suit. After discovery had been closed Hunt moved for summary judgment, prompting this memorandum opinion and order.[4]

## One Threshold Nonissue

Palmer v. Marion County, 327 F.3d 588, 597-99 (7th Cir.

---

[4] In the midst of discovery, in her own deposition Burke confirmed that she had voluntarily dismissed her state law claim of intentional infliction of emotional distress (B. Dep. 128).

9

2003) and cases cited there teach that when a party opposing summary judgment fails to address a claim in his, her or its responsive memorandum, that claim is deemed to have been abandoned. Here Burke's memorandum is totally silent as to the several substantive grounds advanced by Hunt to torpedo her state law retaliatory discharge claim. Hence that claim has been abandoned, and Hunt's summary judgment motion is granted as to that claim.

## FMLA Claims

Enacted to "allow employees to take periods of leave from their jobs for various health and family related reasons," FMLA bestows a number of entitlements on covered employees (Phelan v. City of Chicago, 347 F.3d 679, 682-83 (7th Cir. 2003)). For example, FMLA allows qualifying workers to take up to 12 weeks of unpaid leave and guarantees them--with important limitations--reinstatement to the same or an equivalent employment position on their return to work (Sections 2612(a), 2614(a)). In addition the statute creates two distinct categories of protection for those entitlements (King v. Preferred Tech. Group, 166 F.3d 887, 891 (7th Cir. 1999)): Employers may not "interfere with" FMLA rights, either (1) by substantively denying those rights outright or (2) by retaliating or otherwise discriminating against employees who exercise those rights (id.). Burke claims that Hunt violated her FMLA rights by engaging in both varieties of

prohibited action.

Count I: Denial of FMLA Rights

In Count I Burke complains of Hunt's failure to reinstate her, either to her old position or to one of "equivalent employment benefits, pay, and other terms and conditions of employment," on her return from FMLA leave (Section 2614(a)(1)). While the FMLA does generally guarantee such reinstatement (Phelan, 347 F.3d at 683), Hunt has correctly responded that there is an exception to that "guaranty" and that its own actions qualify for that exception.

FMLA itself (Section 2614(a)(3)) and the relevant federal regulations (29 C.F.R. ("Reg.") §825.216(a)) make clear that the FMLA extends to employees no greater employment rights than they would have had if they had been working during the FMLA leave period. And it is undisputed that Burke's termination would have taken place even if she had been working rather than taking leave: Her job was eliminated due to Weyerhaeuser's decision to restructure its contract with Hunt, a restructuring that removed Burke's position for efficiency reasons.

No evidence even suggests that the reasons for Weyerhaeuser's decision were anything but legitimate or, indeed, that Burke's taking FMLA leave had any influence at all on the

elimination of her position.[5] Because Burke would have been terminated--obviously with no right of reinstatement to her nonexistent prior job and, equally obviously, with no such right as to any nonexistent equivalent alternative job--even if she had not been on FMLA leave, Hunt did not violate FMLA by failing to have reinstated her once she had been terminated (see, e.g., Ilhardt v. Sara Lee Corp., 118 F.3d 1151, 1157 (7th Cir. 1997), applying Reg. §825.216(a)(1)).[6]

Count II: Retaliation

Burke's remaining claim charges Hunt with a retaliatory termination because she took FMLA leave, thereby violating Section 2615(a)(2). As Burke correctly acknowledges, such claims

---

[5] Although not all Circuits agree (see, e.g., Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 962-64 (10th Cir. 2002), our Court of Appeals places the ultimate burden squarely on the employee to present evidence that he or she would have received a given benefit if not on FMLA leave (see, e.g., Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1018 (7th Cir. 2000)). It need scarcely be said that this Court must decline Burke's invitation to ignore such binding precedent (B. Mem. 7)--but even if the burden had been shifted to Hunt, it has plainly shown that there is no genuine factual dispute on the issue.

[6] If anything, Hunt appears to have gone above and beyond its FMLA duties in its treatment of Burke. Under Reg. §825.216(a)(1), when an employee is legitimately laid off and her employment is terminated during FMLA leave, the employer has no obligation to continue that leave beyond the termination date. Nevertheless, although her position was eliminated two weeks into her leave, Hunt allowed Burke her full 12 weeks, paying her 50% of her salary the entire time (remember that FMLA assures a right to take leave, but not leave with pay) and affording her an extended window during which an alternative job might open up.

12

are analyzed under the same framework used for evaluation of retaliation claims under other employment statutes, such as Title VII (Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004)). To that end Burke has invoked the familiar "burden-shifting" approach as adapted by our Court of Appeals from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to the retaliation arena (see Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 642 (7th Cir. 2002)). That approach first requires an employee to establish a multi-element prima facie case (Haywood v. Lucent Techs., Inc., 323 F.3d 524, 531 (7th Cir. 2003)).[7] That having been done, the burden of production shifts to the employer to offer up a "legitimate non-invidious reason" for its adverse employment action (id.). Then the burden of production shifts back to the employee (who always bears the burden of persuasion) to show[8] the employer's proffered reason or

---

[7] In that regard Burke has bitten off more than she needs to chew. While her Mem. 2 accurately quotes King, 166 F.3d at 892 as requiring a showing of a "causal connection between the employee's protected activity and the employer's adverse employment action," post-King caselaw (see, e.g., Stone, 281 F.3d at 643-44) repeatedly teaches that a plaintiff proceeding under the McDonnell Douglas burden-shifting method need not establish causation as part of her prima facie case.

[8] Although the text speaks about what an employee must "establish" or "persuade" or "show," those terms merely echo the terminology in the caselaw and are not the standards applied here. This Court has instead applied the appropriate Rule 56 standard, imposing on Burke the lesser burden of identifying a genuine issue of material fact as to the essential elements of her case.

13

reasons was or were in fact pretextual (id.).

Hunt does not really contest Burke's establishment of her prima facie case (H. Mem. 9-11). Instead Hunt argues (1) that it has provided a legitimate nondiscriminatory reason for Burke's termination and (2) that Burke has failed to provide evidence even suggesting that the reason was pretextual (id.).

It has already been explained that Hunt has provided extensive evidence that the elimination of Burke's position and her consequent termination were ascribable to a client's decision to restructure for cost-saving reasons and had nothing to do with Burke's FMLA leave. Unsurprisingly in light of that uncontroverted (and compelling) showing, Burke's responsive memorandum offers no direct argument that Hunt's explanation is pretextual. What she tenders instead are extensive quotations from King, 166 F.3d at 894 and a citation to Merli v. Bill Communc'ns, Inc., No. 01 Civ. 0359 (LMM), 2002 U.S. Dist. LEXIS 4530, at *7, *19 (S.D. N.Y. Mar. 18), presumably as examples of cases in which plaintiffs were able to avoid summary judgment by offering evidence indicating possible pretext.

But those references cannot do the job, for those cases have no relevance where as here there is a total evidentiary void on the pretext issue. With no arguable factual issue as to the pretextuality of Hunt's stated reason for Burke's termination, and with no other remotely colorable reason to preclude summary

judgment,[9] this Court grants Hunt's motion for summary judgment as to Burke's retaliation claim too.

## Conclusion

For the reasons stated in this opinion, this Court holds that this case is totally lacking in any genuine issue of material fact, so that Hunt is entitled to a judgment as a matter of law as to each of Burke's three remaining claims--her abandoned state law retaliatory discharge claim and her two FMLA-related claims, one for the denial of statutory rights and the other for retaliation. Hunt's motion for summary judgment is therefore granted on all counts, and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 30, 2006

---

[9] Burke's Mem. 7-11 has also advanced a more general--and equally unpersuasive--defense of her retaliation claim. That discussion--incongruously inserted at the end of what purports to be Burke's discussion of her denial claim--begins by offering an eclectic survey of extra-jurisdictional caselaw addressing retaliatory discharge claims in primarily non-FMLA contexts. It then goes on to contend at Mem. 10--presumably drawing on those cases--that because (1) it was Hunt's "practice" to find new positions for administrative assistants whose old positions had been eliminated and (2) there was a "suitable alternative job opening that [Hunt] could have reinstated her into," Burke has established a genuine issue of fact to stave off summary judgment. Even if those cases could actually support such a claim--scarcely a clear proposition--Burke is once again undone by her evidentiary failures. As already shown, she has brought no evidence that Hunt had any such practice or that there was an available alternative job opening into which she could have been placed.

15